**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF TEXAS**
**GALVESTON DIVISION**

| | |
|---|---|
| BRADLEY THOMAS BOONE, § | |
| § | |
| Plaintiff. § | |
| § | |
| V. § | CIVIL ACTION NO. 3:21-cv-00279 |
| § | |
| COMMISSIONER OF SOCIAL § | |
| SECURITY, § | |
| § | |
| Defendant. § | |

## OPINION AND ORDER

Plaintiff Bradley Thomas Boone ("Boone") seeks judicial review of an administrative decision denying his applications for disability insurance benefits and supplemental security income under Titles II and Title XVI of the Social Security Act (the "Act"). *See* Dkt. 1. Boone also seeks a "ruling stating that the Social Security Administration's actions of paying doctors to assign physical limitations without any kind of physical examination in forgery and fraud"; "removal of Administrative Law Judge Kelly Matthews from her position as a Judge for aggravated perjury, fraud, retaliatory discrimination, and intentional malicious denial of disability benefits knowingly causing intentional prolonged pain"; "Punitive Damages of $25 million for intentionally violating the 14th Amendment of the Constitution, economic suppression, forgery, fraud, and discrimination"; and "Aggravated Damages of $5 million for mental distress, pain, anguish, grief, and anxiety, intentional prolonged suffering, and severe depression." *Id*. at 4–5. Pending before me are competing motions for summary judgment filed by Boone and Defendant Kilolo Kijakazi, the Acting Commissioner of the Social Security Administration (the "Commissioner"). *See* Dkts. 26,[1] 27.

---

[1] The document that Boone filed at the time his motion for summary judgment was due is styled "Plaintiff Final Response to Federal Review." Dkt. 26. I have construed this document as a motion for summary judgment.

After reviewing the briefing, the record, and the applicable law, Boone's motion for summary judgment (Dkt. 26) is **DENIED**, and the Commissioner's motion for summary judgment (Dkt. 27) is **GRANTED**.

## BACKGROUND

On March 7, 2016, Boone filed applications for Title XVI supplemental security income and Title II disability benefits, alleging disability beginning on January 7, 2013. His applications were denied and denied again upon reconsideration. Subsequently, Administrative Law Judge ("ALJ") Kelly Matthews ("ALJ Matthews") held a hearing and found that Boone was not disabled. Boone filed an appeal with the Appeals Council. The Appeals Council denied review, making the ALJ's decision final and ripe for judicial review. Boone sought judicial review under 42 U.S.C. § 405(g), and this Court reversed and remanded this matter for reconsideration on May 5, 2020. *See Boone v. Saul*, No. 3:19-CV-00175, 2020 WL 2130992 (S.D. Tex. May 5, 2020). On May 30, 2020, the Appeals Council issued an order remanding this matter to ALJ Matthews for further proceedings. ALJ Matthews held a hearing on November 3, 2020, during which Boone appeared and declined representation by counsel. On December 17, 2020, ALJ Matthews again issued an unfavorable decision. Boone timely field an appeal with the Appeals Council, which was denied on September 6, 2022, making the ALJ's decision final and ripe for judicial review.[2]

## APPLICABLE LAW

The standard of judicial review for disability appeals is provided in 42 U.S.C. § 405(g). *See Waters v. Barnhart*, 276 F.3d 716, 718 (5th Cir. 2002). Courts reviewing the Commissioner's denial of social security disability applications limit their analysis to (1) whether the Commissioner applied the proper legal standards, and (2) whether the Commissioner's factual findings are supported by substantial

---

[2] I have already addressed this matter's "tortured procedural history" in denying the Commissioner's Motion to Dismiss. Dkt. 22 at 1.

evidence. *See Est. of Morris v. Shalala*, 207 F.3d 744, 745 (5th Cir. 2000). Addressing the evidentiary standard, the Fifth Circuit has explained:

> Substantial evidence is that which is relevant and sufficient for a reasonable mind to accept as adequate to support a conclusion; it must be more than a scintilla, but it need not be a preponderance. It is the role of the Commissioner, and not the courts, to resolve conflicts in the evidence. As a result, [a] court cannot reweigh the evidence, but may only scrutinize the record to determine whether it contains substantial evidence to support the Commissioner's decision. A finding of no substantial evidence is warranted only where there is a conspicuous absence of credible choices or no contrary medical evidence.

*Ramirez v. Colvin*, 606 F. App'x 775, 777 (5th Cir. 2015) (cleaned up). Judicial review is limited to the reasons relied on as stated in the ALJ's decision, and *post hoc* rationalizations are not to be considered. *See SEC v. Chenery Corp.*, 332 U.S. 194, 196 (1947).

Under the Act, "a claimant is disabled only if she is incapable of engaging in *any* substantial gainful activity." *Anthony v. Sullivan*, 954 F.2d 289, 293 (5th Cir. 1992) (cleaned up). The ALJ uses a five-step approach to determine if a claimant is disabled, including:

> (1) whether the claimant is presently performing substantial gainful activity; (2) whether the claimant has a severe impairment; (3) whether the impairment meets or equals a listed impairment; (4) whether the impairment prevents the claimant from doing past relevant work; and (5) whether the impairment prevents the claimant from performing any other substantial gainful activity.

*Salmond v. Berryhill*, 892 F.3d 812, 817 (5th Cir. 2018) (quoting *Kneeland v. Berryhill*, 850 F.3d 749, 753 (5th Cir. 2017)).

The burden of proof lies with the claimant during the first four steps before shifting to the Commissioner at Step 5. *See id.* Between Steps 3 and 4, the ALJ considers the claimant's residual functional capacity ("RFC"), which serves as an indicator of the claimant's capabilities given the physical and mental limitations detailed in the administrative record. *See Kneeland*, 850 F.3d at 754. The RFC also

helps the ALJ "determine whether the claimant is able to do her past work or other available work." *Id.*

## THE ALJ'S DECISION

The ALJ found at Step 1 that Boone had not engaged in substantial gainful activity since January 7, 2013. *See* Dkt. 25-15 at 9.

The ALJ found at Step 2 that Boone suffered from "the following severe impairments: lumbar post laminectomy syndrome and thoracic degenerative disc disease." *Id.*

At Step 3, the ALJ found that none of these impairments met any of the Social Security Administration's listed impairments. *See id.* at 11.

Prior to consideration of Step 4, the ALJ determined Boone's RFC as follows:

> [T]he claimant has the residual functional capacity to perform sedentary work as defined in 20 C.F.R. § 404.1567(a) and 416.967(a). However, the claimant can sit for 30 minutes at a time and then would need to stand for 5-10 minutes before resuming a sitting position. He can stay on task during this transition. Further, he is able to understand, carry out, and remember detailed, but not complex, instructions.

*Id.* at 12.

At Step 4, the ALJ found that Boone is "is unable to perform any past relevant work." *Id.* at 21.

At Step 5, the ALJ found that "there are jobs that exist in significant numbers in the national economy that [Boone] can perform." *Id.* at 22. Relying on the Medical-Vocational Guidelines, the ALJ explained that Boone is not disabled.

## DISCUSSION

Boone raises 11 points for my consideration. I will address each in turn.

**1.** ***ALJ Matthews Properly Held a Hearing Following Remand***

Boone argues that the hearing "scheduled by ALJ Kelly Matthews on November 3, 2020, was in violation of [20 C.F.R. § 404.930(b)]." Dkt. 26 at 4. That regulation states that the Commissioner "will hold a hearing *only* if you or another party to the hearing file a written request for a hearing." 20 C.F.R. § 404.930(b)

4

(emphasis added). Boone did not request a hearing. To the contrary, Boone "specifically sent a letter to ALJ Kelly Matthew's office stating that there was no need for a hearing." Dkt. 26 at 4. Accordingly, Boone contends the November 3, 2020 hearing was unlawful.

But 20 C.F.R. § 404.930(b) does not apply to a case on remand from a district court. Rather, the applicable regulation is 20 C.F.R. § 404.983, which vests authority in the Appeals Council to either "make a decision [on its own], dismiss the proceedings, . . . or remand the case to an administrative law judge . . . to take action and issue a decision or return the case to the Appeals Council with a recommended decision." 20 C.F.R. § 404.983(a). In Boone's case, the Appeals Council opted for remand to the ALJ with instructions to "offer [Boone] the opportunity for a hearing, take any further action needed to complete the administrative record and issue a new decision." Dkt. 26-4 at 2. ALJ Matthews offered Boone the opportunity for a hearing as required by the Appeals Council pursuant to 20 C.F.R. § 404.983(e). *See also* 20 C.F.R. § 404.977(a) ("The Appeals Council may remand a case to an administrative law judge so that he or she may hold a hearing and issue a decision or a recommended decision."). Accordingly, it was not error for ALJ Matthews to afford Boone the opportunity for a hearing.

## 2. *The Hearing Did Not Violate 42 U.S.C. § 405(g)*

Boone next argues that the November 3, 2020 hearing violated 42 U.S.C. § 405(g) because this court's prior "ruling does not stipulate any cause for rehearing." Dkt. 26 at 5. Boone misunderstands this court's previous orders. On April 17, 2020, I recommended that "the decision of the ALJ be **REVERSED**, and [Boone's] case be **REMANDED** to the Commissioner *for reconsideration in accordance with this opinion.*" Dkt. 26-1 at 9 (emphasis added). On May 5, 2020, United States District Judge Jeffrey V. Brown approved and adopted my memorandum and recommendation "in its entirety as the holding of the Court" and remanded Boone's case "to the Commissioner *for reconsideration consistent with this opinion.*" Dkt. 26-3 at 3 (emphasis added). In other words, this court's

5

opinion—my memorandum and recommendation as adopted by Judge Brown—*is the basis for rehearing*. The face that Judge Brown also issued a final judgment (stating that the matter was dismissed pursuant to his order adopting my memorandum and recommendation) does not mean that Boone finally won and was entitled to benefits. It simply means that, had the Commissioner thought this court wrong to have reversed and remanded Boone's case, the Commissioner could have appealed this court's ruling to the Fifth Circuit Court of Appeals before remanding to the Appeals Council. Boone is simply incorrect to suggest that ALJ Matthews "decided to appeal the federal court decision in her own court." Dkt. 26 at 5.

3.   ***ALJ Matthews Should Not Have Recused Herself***

In his third point of contention, Boone argues that "[c]ommon sense dictates that a 2nd hearing, for the same application, by the same ALJ, after their ruling was recommended to be reversed, is not a fair, or legal, procedure for a system based on checks and balances." Dkt. 26 at 5. That may be, but what makes sense to the common man and what is correct under the law are not always the same thing. The argument Boone advances has been rejected time and time again:

> First, judicial rulings alone almost never constitute a valid basis for a bias or partiality motion. In and of themselves (i.e., apart from surrounding comments or accompanying opinion), they cannot possibly show reliance upon an extrajudicial source; and can only in the rarest circumstances evidence the degree of favoritism or antagonism required (as discussed below) when no extrajudicial source is involved. Almost invariably, they are proper grounds for appeal, not for recusal. Second, opinions formed by the judge on the basis of facts introduced or events occurring in the course of the current proceedings, or of prior proceedings, do not constitute a basis for a bias or partiality motion unless they display a deep-seated favoritism or antagonism that would make fair judgment impossible. Thus, judicial remarks during the course of a trial that are critical or disapproving of, or even hostile to, counsel, the parties, or their cases, ordinarily do not support a bias or partiality challenge. They may do so if they reveal an opinion that derives from an extrajudicial source; and they will do so if they reveal such a high degree of favoritism or antagonism as to make fair judgment impossible. An example of the

6

> latter (and perhaps of the former as well) is the statement that was alleged to have been made by the District Judge in *Berger v. United States*, 255 U.S. 22, 41 S.Ct. 230, 65 L.Ed. 481 (1921), a World War I espionage case against German–American defendants: "One must have a very judicial mind, indeed, not [to be] prejudiced against the German Americans" because their "hearts are reeking with disloyalty." *Id.*, at 28 (internal quotation marks omitted). *Not* establishing bias or partiality, however, are expressions of impatience, dissatisfaction, annoyance, and even anger, that are within the bounds of what imperfect men and women, even after having been confirmed as federal judges, sometimes display. A judge's ordinary efforts at courtroom administration—even a stern and short-tempered judge's ordinary efforts at courtroom administration—remain immune.

*Liteky v. United States*, 510 U.S. 540, 555–56 (1994) (cleaned up). Boone has not identified facts that would fall within the incredibly exacting standard for establishing bias or partiality.

### 4.  *ALJ Matthews Properly Held a De Novo Hearing*

Boone contends that because 42 U.S.C. § 405(g) "does not mention the term 'de novo' hearing anywhere," the November 3, 2020 hearing somehow violated that statute. Dkt. 26 at 6. But this court's remand order and the relevant statutes and regulations cannot be read in isolation. 42 U.S.C. § 405(g) permits a district court to remand a case. 20 C.F.R. § 404.983(a) authorizes the Appeals Council to "remand the case to an administrative law judge following the provisions in paragraph (e) of this section." Paragraph (e) provides that when determining whether to remand to an administrative law judge, the Appeals Council is directed to "follow the procedures explained in § 404.977." 20 C.F.R. § 404.983(e). That regulation states: "The Appeals Council may remand a case to an administrative law judge so that he or she may hold a hearing and issue a decision or a recommended decision." 20 C.F.R. § 404.977(a). On remand, "[t]he administrative law judge shall take any action that is ordered by the Appeals Council and may take any additional action that is not inconsistent with the Appeals Council's remand order." *Id.* § 404.977(b). That is exactly what happened here. As explained above, this court reversed the Commissioner's decision and remanded Boone's case for

7

reconsideration; the Appeals Council determined that such reconsideration should take the form of a hearing; and ALJ Matthews properly held a hearing. Because this court's order reversing the Commissioner's decision rendered ALJ Matthew's initial decision null and void, the rehearing was necessarily de novo. *See* Dkt. 26-4 at 2 (informing Boone that the ALJ would "*issue a new decision*" (emphasis added)). Boone simply makes too much of the fact that the word "de novo" does not appear in the record.

### 5.   *ALJ Matthews Did Not Commit Perjury*

Boone next argues that ALJ Matthews committed aggravated perjury by stating at the November 3, 2020 hearing: "The federal judge did not rule in your favor. The federal judge indicated that there were some questions regarding my opinion and how I came to find that you could do sedentary work." Dkt. 26 at 6 (citing 18 U.S.C. § 1621). There are several reasons why this argument fails.

First, administrative law judges "have been held absolutely immune from suit because they perform adjudicatory roles which are functionally substantially equivalent to those of judges." *Johnson v. Kegans*, 870 F.2d 992, 995 (5th Cir. 1989). Accordingly, an ALJ could never be charged with perjury for acting in her judicial capacity. Second, ALJ Matthews was not under oath, as required for 18 U.S.C. § 1621 to apply. Finally, even if ALJ Matthews was under oath and not immune, she did not commit perjury because she did willfully subscribe "any material matter which [s]he does not believe to be true." 18 U.S.C. § 1621(a). It is true that Judge Brown granted summary judgment in Boone's favor in 2020. But that did *not* mean that Judge Brown found Boone disabled and entitled to benefits. Rather, Judge Brown remanded Boone's case to the Commissioner for reconsideration. *See* Dkt. 25-17 at 84. The ALJ was simply trying to explain this distinction to Boone. Perhaps it would have been more precise for the ALJ to say: "The federal judge did not rule in your favor on your disability claim; the judge merely granted you summary judgment and remanded your case for further

proceedings—proceedings which may or may not result in a finding of disability." Regardless, the ALJ did not commit perjury.

### 6. *The ALJ Properly Considered All the Evidence*

Curiously, despite his protestation that a de novo hearing was improper, Boone also argues that ALJ Matthews failed to conduct a de novo hearing. In support, Boone quotes selectively from the ALJ's reasoning at Step 5 to argue that the ALJ's "ruling was solely based on the vocational expert Byron Pettingill's testimony." Dkt. 26 at 7 (quoting, without citation, Dkt. 25-15 at 23). Not so. The ALJ devoted 10 pages to discussing Boone's entire medical history and the opinions therein. *See* Dkt. 25-15 at 12–21. Boone may not agree with the outcome, but there is no question that the ALJ reviewed all the evidence anew.

Boone also argues that the ALJ "lied about [Pettingill's testimony]" and that Pettingill "admitted that the functional capacity evaluation by Alexanna Godleski . . . showed that [Boone] was clearly below the classification of sedentary and that there are no jobs in the national economy that [he] can work." Dkt. 26 at 7. This is also not true. During the hearing, the ALJ asked Boone if he would "like to ask any question or say anything at this point." Dkt. 25-15 at 54–55. Boone responded with a four-paragraph statement followed by a single question:

> Yes. I have this functionality capacity evaluation that was performed at UTMB. This is the place designated by [t]he Department of Labor.
>
> The methods that they used to determine my restrictions are approved by [t]he Department of Labor. The Dictionary of Occupational Titles also states that these qualifications are universal across all forms of government.
>
> This functionality capacity clearly states that I am disabled. And it also states just like Federal Judge stated, that not only are one of my limitations below sedentary but every single one is below sedentary.
>
> So there's absolutely no way that you can say that there are any jobs in this national economy that I can perform. *Are you familiar with the functional capacity evaluation?*

9

*Id.* at 55 (emphasis added). When Pettingill responded "Yes, sir," he was affirming *only* that he was "familiar with the functional capacity evaluation," nothing else. *Id.* Thus, ALJ Matthews did not lie about Pettingill's testimony.

### 7.     *The ALJ's RFC Is Supported by Substantial Evidence*

I previously recommended remand because there was not substantial evidence in the record "to support a sedentary exertional level." Dkt. 25-17 at 91. Specifically, I found that although the record supported "that Boone can sit for a maximum of 30 minutes," the record did not support "that Boone can sit six hours of an eight-hour workday," which is what "sedentary work" implies. *Id.* at 90–91. On remand, ALJ Matthews fully addressed this issue by confirming with a vocational expert that there exist sedentary occupations in the national economy in significant numbers that would accommodate someone like Boone who can sit for only 30 minutes at a time. *See* Dkt. 25-15 at 53–54.

Boone argues that he cannot "sit[] for 30 minutes followed by standing for 5–10 minutes, and repeating" and that "[t]here is no medical evidence anywhere that states this limitation." Dkt. 29 at 2. But it is not necessary that there be a medical opinion in the record stating this limitation verbatim. What is required is that substantial evidence support the RFC. "The ALJ is entitled to make any finding that is supported by substantial evidence, regardless of whether other conclusions are also permissible." *Jones v. Berryhill*, No. CV 17-5324, 2018 WL 1325851, at *2 (E.D. La. Feb. 23, 2018). That means that even if I might have reached a different conclusion, I must uphold the ALJ's opinion so long as substantial evidence supports it. *See id.*

Here, the ALJ thoroughly reviewed Boone's medical records and the medical opinions therein, including references to Boone's ability "to care for his kids" and multiple providers' recommendations that Boone "pursue a hobby, occupation, or volunteer to enable him to move around." Dkt. 25-15 at 21. The ALJ offered the following reasoning for her decision:

> In consideration of [Boone]'s subjective complaints of pain and numbness, as well as the findings of the February 2018 functional capacity evaluation that tested him for 30 minutes and found a demonstrated ability to sit for that amount of time, the undersigned limited him to sitting for 30 minute time periods before being afforded the opportunity to stand for 5–10 minutes before resuming a sitting position. As outlined above, despite [Boone]'s subjective complaints, mental status findings consistently were normal (attention, arousal, orientation, language, fluency, affect, judgment, knowledge, and recall), the undersigned finds that he would be able to stay on task during this transition. However, in affording [Boone] the maximum benefit of the doubt in consideration of his pain complaints and the potential to be distracted because of it, the undersigned further limited him to detailed, but not complex, instructions.

*Id.* "A finding of no substantial evidence is warranted only where there is a conspicuous absence of credible choices or no contrary medical evidence." *Ramirez*, 606 F. App'x at 777. The ALJ's analysis of Boone's medical records provides substantial evidence that supports the ALJ's decision. Moreover, as the ALJ observed: "There is no objective evidence within the record to indicate [Boone]'s impairments preclude the residual functional capacity assessment above." Dkt. 25-15 at 21. I agree. Considering the totality of the circumstances and the ALJ's thorough review of the evidence, I must uphold the Commissioner's decision.

### 8. *An Occupational Therapist Is Not an Acceptable Medical Source*

In his eighth point of contention, Boone argues that an occupational therapist is an acceptable medical source and that the functional capacity evaluation performed by his occupational therapist "is compelling evidence of [d]isability." Dkt. 26 at 7. In support, Boone cites to 20 C.F.R. § 404.1527(a) and 20 C.F.R. § 416.927. *See* Dkt. 29 at 3. But these are not the correct regulatory provisions. The Code of Federal Regulations defines "[a]cceptable medical source" by providing eight professions that qualify as acceptable medical sources, none of which include occupational therapists. *See* 20 C.F.R. § 404.1502(a)(1)–(8) (defining acceptable medical sources for applications for disability benefits); 20 C.F.R. § 416.902(a)(1)–(8) (defining acceptable medical sources for applications

11

for supplement security income). Accordingly, an occupational therapist is not an acceptable medical source for either disability benefit or supplemental security income applications, and Boone's functional capacity evaluation is not compelling evidence of disability.

Boone also argues that "the ALJ . . . negated the findings in [his functional capacity evaluation]." Dkt. 29 at 3. Yet, the ALJ "limited [Boone] to sitting for 30 minute time periods" in the RFC she crafted "*[i]n consideration of . . .* the findings of the February 2018 [functional capacity evaluation conducted by Boone's occupational therapist] that tested [Boone] for 30 minutes and found a demonstrated ability to sit for that amount of time." Dkt. 25-15 at 21 (emphasis added). Thus, even though this functional capacity evaluation was not binding on the ALJ, the ALJ nevertheless gave Boone the benefit of the doubt and crafted limitations in consideration of that evaluation.

### 9. *Boone's Ninth and Tenth Points of Contention Are Moot*

Boone contends that the Commissioner "lost/destroyed [his] appeal of ALJ Kelly Matthews unfavorable decision on December 28, 2020" (Dkt. 26 at 9) and that the Commissioner "did not file 'additional and modified findings of fact' with the federal court." *Id.* (quoting 42 U.S.C. § 405(g)). These points of error arise from this case's "tortured procedural history," which I will not revisit. Dkt. 22 at 1. I found in Boone's favor on the issue of exhaustion of administrative remedies and have given him the opportunity to have this case decided on the merits. That is all that due process requires. *See Boettcher v. Sec'y of Health & Human Servs.*, 759 F.2d 719, 723 (9th Cir. 1985) ("The essence of due process is the opportunity to be heard at a meaningful time and in a meaningful manner.").

### 10. *Boone Lacks Standing to Bring Criminal Charges*

Boone argues that "[m]ultiple agents and/or offices of the Social Security Administration knowingly conspired to deprive [him] of Social Security Disability Insurance benefits." Dkt. 26 at 10 (citing 18 U.S.C. §§ 241–242). I will assume, *arguendo,* that this is true. Even so, "private citizens have no standing to institute

federal prosecutions." *Mackey v. Astrue*, No. 6:10-CV-105, 2011 WL 3703273, at *2 (N.D. Tex. Aug. 8, 2011), *aff'd*, 486 F. App'x 421 (5th Cir. 2012). Thus, this court "lacks subject-matter jurisdiction to adjudicate [Boone]'s § 241 [or § 242] claim[s] because he has no standing to assert [them]." *Id.*

To the extent Boone believes he can sue the Commissioner and ALJ Matthews for violating the "rights afforded to [him] by the Constitution," he is mistaken. Dkt. 29 at 10. Social security claimants "cannot pursue a *Bivens* action for the denial of social security benefits." *Butler v. Apfel*, 144 F.3d 622, 624 (9th Cir. 1998) (noting that the Supreme Court in *Schweiker v. Chilicky*, 487 U.S. 412, 423–24 (1987) "limit[ed] remedies to those specifically provided for in the Social Security Act").

## CONCLUSION

For the reasons stated above, Boone's motion for summary judgment (Dkt. 26) is **DENIED**, and the Commissioner's motion for summary judgment (Dkt. 27) is **GRANTED**. I will enter a separate final judgment.[3]

SIGNED this 29th day of June 2023.

ANDREW M. EDISON
UNITED STATES MAGISTRATE JUDGE

---

[3] For Boone's convenience I note that Judge Brown has already approved an application for Boone to proceed in forma pauperis. *See* Order Granting Application to Proceed IFP, *Boone v. Saul*, No. 3:21-mc-00011 (S.D. Tex. Oct. 13, 2021), ECF No. 2. Thus, Boone "may proceed on appeal in forma pauperis without further authorization." FED. R. APP. P. 24(a)(3).